would do, and, if he does it not, he is not entitled to the contract secured by the broken promise. Such a promise permits of no latitude and no equity.

The demurrer is overruled, with costs.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, and MILLER, JJ.

Van Iderstine, Badger & Barker, for appellant.
Charles L. Livingston, for respondent.

PER CURIAM. Interlocutory judgment affirmed, with costs, on the opinion of Mr. Justice Thomas at Special Term.

---

VAN HAAREN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

MASTER AND SERVANT (§ 185*)—INJURIES TO SERVANT—BRAKEMEN.

Where the middle brakeman of a freight train was injured by being thrown therefrom as he was attempting to board the train at his post of duty, the conductor was not negligent in failing to see that all the employés were aboard before starting the train.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 185.*]

Burr and Rich, JJ., dissenting.

Appeal from Trial Term, Nassau County.

Action by Peter H. Van Haaren against the Long Island Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before WOODWARD, JENKS, BURR, RICH, and MILLER, JJ.

W. C. Beecher, for appellant.
Martin T. Manton, for respondent.

MILLER, J. I think that this judgment should be reversed, for errors of the trial court in refusing to charge as requested by the defendant. A brief statement to show the disputed questions of fact is necessary.

The plaintiff alleged in a complaint, verified by his guardian ad litem, that he was in the employ of the defendant as a brakeman and switchman, and that, while attempting to board his train upon returning to it after turning a switch, it was negligently started, and he was thrown under the wheels. His story upon the trial, briefly stated, was that his train was due to start for its day's work from Holban yard, near Jamaica, at 5 o'clock in the morning; that on the morning of May 18, 1907, he reported for work and was directed by the conductor to go with a fellow brakeman to get some fuses, torches, and oil; that, while away from the train to obey that instruction, it left; that he and his fellow workman then took a train for Valley Stream, and walked from there to Far Rockaway, a distance of eight or nine miles, where he arrived between 4 and 4:30 in the afternoon, found his

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

train, and reported to the conductor, who told him to go to work. I quote from his testimony:

"He told me to go back on my train. The train was then standing still. I spent about 20 to 25 minutes there talking with the conductor, and then walked back to the middle of the train; I should judge 10 or 15 cars back from the engine. Q. What did you do when you got there? A. The conductor says, 'All aboard!' I put my left foot on the step, put my hand on the handle, and I was just getting on. The conductor gave him the signal. The train gave a lurch, and threw me off underneath the wheel, and I got my foot amputated."

The defendant's version of the occurrence, supported by the testimony of four witnesses, is that the train left Holban yard without the plaintiff, owing to the latter's fault in not being at his post; that his place had been supplied by another brakeman, who had joined the crew at Far Rockaway; and that he had not been seen by the conductor or the rest of the crew after leaving Holban yard until the accident occurred, which resulted from his attempting to board the train while it was in motion.

The defendant excepted to the refusal of the trial court to charge each of the following requests:

"I ask your honor to charge, if the conductor directed the plaintiff to resume his place and waited a reasonable length of time after such direction, he would then be justified in starting his train."

"I ask your honor to charge that the conductor's duty in this case did not require him to watch each trainman to see if he had gone aboard before starting his train."

Even upon the plaintiff's version of the occurrence, the jury were at liberty to find that the conductor was not negligent. The plaintiff was a middle brakeman. His work required him to be at the middle of the train. Brakemen have to be alert and look out for themselves. According to his own account the plaintiff had nothing to do but to take his place on the train, and the conductor was not required to watch his movements. The refusal to charge as requested could only be justified on the ground that the plaintiff's story, if believed, required a verdict in his favor; whereas, the jury were at liberty to find the conductor free from negligence, even upon the plaintiff's version of the accident. It is quite evident that the plaintiff loitered about after he was told to go to work, just as he had been loitering during the day. The judgment and order should be reversed.

Judgment and order reversed and new trial granted; costs to abide the event.

WOODWARD and JENKS, JJ., concur.

BURR, J. I dissent. In order to properly appreciate the force of the exceptions to the refusal of the learned trial court to charge as requested, it becomes important to consider the conflicting stories as to the happening of the accident.

According to the plaintiff's testimony, on the 18th of May, 1907, he was 19 years old, and had been in the defendant's employ as a brakeman 4 days. On the morning of the day in question he reported for work at the Holban yard, near Jamaica. The conductor sent him

to get some fuses and torches and some oil for the lamps. While he was gone for these things the train, which was a freight train consisting of from 20 to 25 cars, left. Plaintiff then walked through the yard and took another train as far as Valley Stream, and from there walked into Far Rockaway, about 8 or 9 miles, and reported to the conductor in the Far Rockaway yard, between 4 and half past 4 in the afternoon. He asked the conductor if he could go to work, and he said, "Yes." The train was then standing still. He spent about 20 to 25 minutes talking with the conductor and then walked back to the middle of the train, 10 or 15 cars back from the engine. When he got there the conductor said, "All aboard!" Plaintiff put his left foot on the step, his hand on the handle, and was just getting on, when the conductor gave the signal to go forward, the train gave a lurch, and he was thrown off and fell underneath the wheel, and his foot was thereby amputated. The car was standing still when he went to get on. The conductor called "All aboard!" just when he had gotten down to the place where he was to get on, in the middle of the train. Plaintiff's story is corroborated to some extent by one witness, James Day. All that he says is that he saw the plaintiff, when the train started to go, with his right hand on the grab rail and his left foot on the step. The cars were then standing still. He noticed the conductor give the signal to start, the cars started off with a jerk, and he saw the plaintiff lying underneath the car. He does not pretend to tell how the plaintiff got to the point where he first saw him attempting to board the train, nor account for his movements before that time.

The defendant's version of the occurrence is as follows: The conductor testified that before the train left the Holban yard he sent one George Firth to get some empty oil cans; that he did not send Van Haaren with him, and did not know that he had gone. When the train left the Holban yard, Van Haaren was not around, and he started without him. He wired to Woodmere for two additional men to come down and meet the train at Far Rockaway. With these men he had a full complement of brakemen. He saw nothing more of the plaintiff until the train was about five blocks to the east of the Far Rockaway yard, when, as he was walking along the top of the car, he looked down on the side and saw the plaintiff hanging there. As soon as he saw him, he gave the signal to stop, got down, and took hold of him, and his foot was then bleeding. He says that the plaintiff did not report to him at all at Far Rockaway, or at any time in that yard, and that he did not know that he was there near the train until he saw him hanging on the car. Another witness, John F. Arthur, at that time employed by the Long Island Railroad Company as a trainman, but not now in its employ, says that as the train was pushing towards the Far Rockaway depot he saw the plaintiff standing on the track. He told him to keep away or he would get hurt, and the plaintiff replied that he was a trainman, working for the Long Island Railroad Company, and knew his business. The witness at that time was walking on top of the car, which was moving about five miles an hour. At that time he says the plaintiff was walking towards the car on which he got hurt. John Smith, another witness, also in the employ of the defendant, testified that the accident did not happen in the Far Rocka-

way yard, that there had been no stop after the train left Inwood until the train stopped and he saw the conductor "down there with Mr. Van Haaren." Charles W. Noe, the conductor of the train, testified that the train, after it left Far Rockaway, did not stop until the accident had happened, and the stopping of the train was the first thing that attracted his attention. John D. Raynor, an investigator in the employ of the defendant, testified to an interview with the plaintiff, in which he said that the plaintiff told him the accident happened at the Far Rockaway freight yard, and that he walked from Valley Stream down the track to the Far Rockaway yard. He waited around there for some time, and the freight train came up from Hamills, and after it came from Hamills it was switching around there, and as it was going by he went to get on, his foot slipped, and he went under the wheel, and he was run over.

At the close of the main charge the counsel for the defendant asked the court to charge:

"If the conductor directed the plaintiff to resume his place, and waited a reasonable length of time after such direction, he would then be justified in starting his train."

The court declined to charge other than as he had charged, and the defendant excepted. Defendant's counsel then asked the court to charge:

"That the conductor's duty in this case did not require him to watch each trainman, to see if he had gone aboard before starting his train."

The court declined to charge other than as had been charged on that subject, and defendant excepted. Although these requests may be academically correct, it does not seem to me that they were applicable to this case, on the theory of either the plaintiff or the defendant. If the plaintiff's story is correct, the conductor did not wait a reasonable length of time after telling him to resume his place, because he walked directly to his position on the train, and as soon as he reached there, and before he had had an opportunity to get upon the train, the train was started by the conductor's signal. The plaintiff and plaintiff's witness both testified that they could see the conductor, and saw him give the signal. If they could see the conductor, the conductor could see the plaintiff.

According to the defendant's version of the occurrence, the conductor did not see the plaintiff at all after leaving the Holban yard, and never gave him any directions to resume his place on the train.